LEARNING RIGHTS LAW CENTER
JANEEN STEEL (SBN 211401)
Janeen@learningrights.org
205 S. Broadway, Suite 808
Los Angeles, California 90012
Phone: (213) 489-4035/F: (213) 489-4033

LAW OFFICE OF SHAWNA L. PARKS
SHAWNA L. PARKS (SBN 208301)
sparks@parks-law-office.com
4470 W. Sunset Blvd., Ste. 107-347
Los Angeles, CA 90027
Phone/Fax: (323) 389-9239

Attorneys for Defendants (Continued next page)

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OXNARD SCHOOL DISTRICT, | ) Case No.: 18-CV-7357-SVW-AS |
| Plaintiff, | ) |
| v. | ) **DEFENDANTS' OPPOSITION TO PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |
| I.H., A MINOR, by and through his parents CYNTHIA CORTEZ AND MALCOLM HERRERA; CYNTHIA CORTEZ, individually; and MALCOLM HERRERA, individually | ) |
| Defendants | ) Judge: Honorable Stephen V. Wilson |

1

DISABILITY RIGHTS ADVOCATES
STUART SEABORN (SBN 198590)
seaborn@dralegal.org
2001 Center St. 4th Fl.
Berkely, CA 94707
Phone: (510)665-8644/F: 510-665-8511

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

*Gadsden City Bd. of Educ. v. B.P.*, 3 F.Supp.2d 1299 (N.D. Alabama 1998) ................ 8

*Honig v. Doe*, 484 U.S. 305 (1988) .......................................................................... 8

*I.R. v. L.A. Unified Sch. Dist.*, 805 F.3d 1164 (9th Cir. 2015) ...................... 5,9

**Rules**

20 U.S.C. §1415(b)(7) ............................................................................ 11

20 U.S.C. §1415(b)(7)(A) ...................................................................... 11

20 U.S.C. §1415(g) ................................................................................. 11

20 U.S.C. §1400, *et seq.* ................................................................... 3,10

34 C.F.R. §300.507(a)(1) ....................................................................... 11

34 C.F.R. §300.510(a) .............................................................................. 6

34 C.F.R. §300.530(g) .............................................................................. 5

34 C.F.R. §300.532(a) ............................................................ 5,6, 8, 10

34 C.F.R. §300.532(c)(2) .......................................................................... 6

42 U.S.C. §12101, *et seq.* .................................................................... 10

Defendants' Opposition to Application for Temporary Restraining Order

## I.     Introduction

This application is an attempt to punish a young child with a disability for the District's failures to provide appropriate services to address his autism, and also retaliate against him for exercising his rights under the Individuals with Disabilities Act (20 U.S.C. §1400 *et seq.*) to file a complaint against the Oxnard School District. There is no basis to issue any kind of restraining order against I.H., particularly as there are ongoing legal proceedings in another forum that are designed to answer the exact question presented in this application, i.e. the appropriate placement for this student, under relevant special education and disability nondiscrimination law. The question of appropriate placement for I.H. – an eight-year-old child with autism – is already being evaluated and discussed by multiple lawyers and experts, in the context of those ongoing legal proceedings. Such a thoughtful and complete review should not be unlawfully circumvented by unilateral action by the District, which created this situation by failing to avail itself over the last four months of numerous legal options under special education law that would have allowed any alleged concerns to be addressed in a thoughtful manner through an evidentiary hearing.

## II.    Procedural History & Factual History – The District Failed To Avail Itself Of Legal Options To Address Any Dispute About I.H.'s Placement On At Least Five Occasions Over The Last Four Months.

I.H. alleges in his affirmatively filed cases, that the District failed to identify him appropriately as needing special education services for at least two years. *See generally* I.H.'s Due Process Complaint, filed the evening of August 16, 2018, Exh. A to Steel Decl.[1]

_____

[1] I.H. does not attempt to directly dispute the facts presented in the District's application. However, many of these events occurred prior to I.H.'s identification for services, or before full services were implemented. In addition, I.H. has filed evidentiary objections that demonstrate that much of the information is evidentiarily flawed. While I.H. concedes that evidence standards on TRO applications may be more flexible, he requests the Court to consider the scope of evidence submitted that is

4

I.H. was finally assessed in the winter of 2017-18. The District found him eligible for special education in January of 2018. However, the District I.H. alleges that the District did not complete a thorough evaluation for Autism. As a result, I.H. obtained an independent educational evaluation by Dr. Betty Jo Freeman, of University of California, Los Angeles, one of the nation's leading experts on Autism. *See* Exh. A Freeman Decl.

On February 26, 2018 the District held another IEP, which became the basis for I.H.'s later "stay put" motion, and subsequent OAH order. *See* Order from OAH and Exh. G, Steel Decl. In that IEP, the District agreed to provide at a District school:

- 1-1 behavior aide, from an outside agency, for the entire school day;
- 20 hours per month (i.e. approximately an hour per day) of supervision by higher level personnel from that same agency to supervise and consult with the 1-1 behavior aide;
- 4 hours per month (i.e. approximately one hour per week) from the school district's behaviorist to support the implementation of the behavior program;
- 30 minutes per week of individual counseling;
- 100 minutes per month of speech and language services in a pull-out program (i.e. in a separate small classroom);
- 240 minutes per week of special education instruction in a pull-out program (i.e. in a separate small classroom) for math and English;
- Behavior Intervention Plan (sometimes referred to as a BIP);
- Numerous accommodations.

Prior to those services being implemented however, there was a behavior incident on March 9, 2018 that resulted in I.H. being removed to a temporary placement at Casa

without foundation, referring to documents not submitted, or hearsay.

Defendants' Opposition to Application for Temporary Restraining Order

Pacifica.[2] 34 C.F.R. §300.530(g) (regarding interim placements under IDEA).
Temporary placements typically last for 45 days unless extended by a hearing officer or
by agreement. 34 C.F.R. §300.532(a). I.H.'s temporary placement was from April 2,
2018 to June 14, 2018. Exh. B, Steel Decl.[3]

On May 1, 2018 the District held an IEP meeting to review the temporary
placement at the 30-day mark. At that IEP meeting the District made an offer to keep
I.H. at Casa Pacifica. I.H.'s mother did not agree with or sign that IEP. <u>The District did
not file to defend its offer as a "Free Appropriate Public Education" under the IDEA.</u>
*See Section III.A;* and *I.R. v. L.A. Unified Sch. Dist<u>.,</u>* 805 F.3d 1164, 1170 (9th Cir.
2015) (School districts in California must initiate an administrative due process hearing
if there is a disagreement between the parent and district regarding placement).

On June 7, 2018 the District held another IEP meeting. The District again offered
Casa Pacifica as I.H.'s placement. I.H.'s mother notified the District she would not
agree for her son to return to Casa Pacifica. <u>Again, the District did not file to defend its
offer as FAPE in the IEP.</u> *See* Steel Decl. ¶6.

I.H.'s temporary placement expired on June 14, 2018. <u>The District did not file to
have the interim placement at Casa Pacifica extended.</u> *See* Steel Decl. ¶7. It could have
done this under clear provisions in the IDEA, that allow for a request an expedited
hearing that will occur in 20 days after request to extend the interim placement when
District the "believes that maintaining the current placement of the child is substantially
likely to result in injury to the child or others," in this case, the current placement was
the February 26, 2018 IEP offer, which was public elementary school placement. 34

---

[2] Although the IEP was held on February 26th, it was not signed by I.H.'s mother until
March 15th, and therefore had not yet been implemented.

[3] Although the District attempts to argue in its papers that this IEP constituted a "change
in placement" under the IDEA, the Office of Administrative Rulings has already held
that Casa Pacifica was just an interim placement, and that the operative IEP in this case
is the one from February 26, 2018. *See* Steel Decl. ¶9.

Defendants' Opposition to Application for Temporary Restraining Order

C.F.R. §300.532(a); 34 C.F.R. §300.532(c)(2).

On July 26, 2018 the District held another IEP meeting to review the report of Dr. Freeman, who had concluded that I.H. has Autism. Despite this new information, the District continued Casa Pacifica, as a placement. I.H.'s mother again said that she rejected the offer of Casa Pacifica.  During the July 26, 2018 Parent requested I.H. attend a District elementary school that has an Autism special day class to implement Dr. Freeman's recommendations. Exh. E; Steel Decl. The District refused to offer a District autism special day class and refused to accept I.H.'s Autism diagnosis. Exh. E; Decl. Steel. Parent requested a home-based program hoping to get the needed Autism specific services. Exh. E; Steel Decl.  Again, the District did not file an administrative proceeding to defend its offer of Casa Pacifica. *See* Steel Decl. ¶8.

The District took no action the entire summer. School started on August 16, 2018. On August 14th, Counsel for I.H. emailed counsel for the District informing them that I.H. intended to come back to school at Cesar Chavez, given that was his last agreed upon placement. Counsel for the District said that the school would "turn [I.H.] away." Exh. G; Steel Decl.  However, the District did not take any legal action or resolve I.H.'s placement issue. *See* Steel Decl. ¶__.

As a result, I.H. stayed at home with no school program. On August 16th, I.H. filed a request for due process with the Office of Administrative Hearings and a motion for "stay put" based on his last agreed upon IEP from February 26, 2018. The District did not file an opposition to I.H.'s motion, and did not respond to the due process complaint. The District did not file a request in that due process hearing to expedite the hearing because of any alleged safety concerns. 34 C.F.R. §300.532(a); 34 C.F.R. §300.532(c)(2); and *see* Steel Decl. ¶9.

The District also failed to hold a resolution session, which is an informal negotiation session that Districts are required to hold within 15 days after the filing of the due process complaint. 34 C.F.R. §300.510(a); and Steel Decl. ¶10.

Only after I.H. exercise of his rights under IDEA did the District file this case

7

Defendants' Opposition to Application for Temporary Restraining Order

initially in Ventura County Superior Court.[4]  On August 20th, 2018 Counsel for the District notified Counsel for I.H. that it intended to file a TRO application in state court. On August 22nd, when the original TRO was noticed in state court, there was no hearing due to a procedural issue. *See* Steel Decl. ¶11. The same day, counsel for I.H. then removed this case to federal court.

On September 5th, counsel for I.H. then filed a motion to expedite the hearing at OAH because the District had failed to hold a resolution session, which is allowed under the procedural rules of IDEA. *See* Steel Decl. ¶10. The District did not file any opposition.  *See* Steel Decl. ¶10.

The District did not refile its TRO request in federal court immediately. Instead, it waited another two and half weeks, while I.H. continued to have no school program. It only filed this request for a TRO after I.H. *won* his unopposed stay put motion with the Office of Administrative Hearings. I.H. received his stay-put order on September 5th and counsel received notice of this TRO late in the day on September 7th.

## III.   Argument

### A. The District's Claim That It Needs Emergency Relief is Belied by the Fact that It Has Waited Months to Resolve I.H.'s Placement, And Failed to Utilize Multiple Legal Avenues That Would Have Allowed Thoughtful Resolution of Any Placement Dispute.

Here, the parties have been in ongoing discussions about I.H.'s placement for nearly four months. *The District took no legal action throughout that process – despite having multiple opportunities to seek legal relief - nor when school started on August 16, 2018. Instead, the District only filed the instant application after I.H. exercised his legal rights and filed a complaint and "stay put" motion against the District – a motion that the District did not oppose.*

---

[4] Although the complaint was apparently lodged with the Court on August 17th, it was not served on counsel until August 22nd.

Defendants' Opposition to Application for Temporary Restraining Order

Moreover, even though exhaustion is not typically required in cases seeking *Honig* injunctions, a District's TRO application should not be used as an end run around available administrative procedures. Indeed, *Honig* injunctions typically involve situations in which truly exigent circumstances exist. *See, e.g., Honig v. Doe*, 484 U.S. 305, 326 (1988) (referencing injunction as alternative to "time-consuming" administrative procedures under IDEA); *Gadsden City Bd. of Educ. v. B.P.*, 3 F.Supp.2d 1299 (N.D. Alabama 1998) (finding that expedited hearing within 10 days insufficient because student returning from suspension, requiring resolution in less than 24 hours). Here, however, the District has waited nearly four months over the course of a dispute about placement, failing to file and/or seek expedited hearings at every turn. Indeed, the District has known since June that I.H.'s placement was in dispute, and that his last controlling IEP placed him at Cesar Chavez with extensive supports. Here, had the District even requested an expedited hearing under 34 C.F.R. §300.532(a) when I.H. filed his due process complaint on August 16th, the hearing – including full evidentiary testimony – *would have already occurred*, and the decision due next week. [34 C.F.R. §300.532(c)(2) for 20 days for hearing, 10 for decision] Instead, the District waited until the last possible time, creating the emergency, and essentially asking that this Court resolve the issue on the papers.

In the Spring of 2018 I.H. had been placed on a temporary (45 day) basis at Casa Pacifica Nonpublic School because of the ongoing failure of the District to address his needs. On May 1, 2018, during a team meeting to address his Individualized Education Plan ("IEP"), I.H.'s mother and counsel did not agree to him continuing at Casa Pacifica Non-Public School after the 45-day interim placement.[5]

The District did not file to with the administrative hearing office to defend their

---

[5] The notes of all of these IEP meetings are attached as exhibits to Isaiah's motion filed at the Office of Administrative Hearings which is Exhibit B to the Declaration of Janeen Steel.

Defendants' Opposition to Application for Temporary Restraining Order

placement offer for I.H. to continue in that setting. Under special education law, School Districts have an obligation to provide a "free appropriate public education." If they believe they are making an offer of, among other things, placement that is appropriate for the student and that offer is rejected by the parents, the Ninth Circuit has held that a District ***must*** file a complaint against the student (via the administrative proceedings at OAH) in order to obtain a finding that the offer provides the appropriate placement and services for the child. *I.R. v. Los Angeles Unified School District*, 805 F.3d 1164, 1168-69 (9th Cir. 2015). Indeed, the Ninth Circuit held that the school district must initiate a due process hearing expeditiously. *Id* at1168-69. The District did no such thing here, and thus neither sought nor obtained an order that its offer of Casa Pacifica was appropriate for I.H.

On June 7, 2018, the IEP team met again to discuss, *inter alia,* placement after the 45 period at Casa Pacifica. Again, I.H.'s mother explained that she did not agree with him continuing in the program.  Again, the District did not file for an administrative hearing to defend their placement or obtain a resolution from the appropriate administrative tribunal that it was an appropriate offer from the District.

On July 26, 2018, the IEP team met again to discuss an independent evaluation by Dr. Freeman from U.C.L.A., who found that I.H. had Autism. However, the District refused to accept Dr.  Freeman's findings or her recommendations.  The District again suggested Casa Pacifica, and I.H.'s mother and counsel explained again that Casa Pacifica Non-Public School was not an appropriate option for I.H. for a number of reasons, including that he was injured while there (*see infra* Section V.A regarding the physical injuries to I.H. at Casa Pacifica). The parties had a discussion about a possible home program and I.H.'s mother and counsel requested placement in an autism program consistent with Dr.  Freeman's recommendations. Again, the District did not file for an administrative hearing to defend its offer of placement.

There were ongoing discussions, but no resolution of I.H.'s school placement as of August 16, 2018, when school started in the District.

Defendants' Opposition to Application for Temporary Restraining Order

Not only did the District fail to file to defend its previous offers of placement, but the District *also* failed to request a hearing at the Office of Administrative hearings on the safety issues it is alleging in this application. Indeed, IDEA gives Districts clear rights in situations such as this to request a hearing from the administrative tribunal on the precise issue of the placement of I.H. during this dispute. Indeed, federal regulations specifically allow a District that "believes that maintaining the current placement of the child is substantially likely to result in injury to the child or others," may request a hearing. 34 C.F.R. §300.532(a). The District did not avail itself of this option either.

Instead, the District gave notice to I.H.'s counsel of this application on August 20th, shortly after he had filed his complaint, which he had filed to resolve his ongoing dispute with the District. However, once I.H. removed this case to federal court, the District waited another two weeks to re-file its TRO.

**B. The appropriate forum is either the Office of Administrative Hearings – the designated agency to hear administrative special education actions in California under IDEA and *in which there is already an ongoing proceeding*.**

Here, the relevant questions, namely where should this young child with a disability attend school, what are the appropriate supportive and therapeutic services needed for him to be successful in school, are all governed by the Individuals with Disabilities Education Act ("IDEA") (20 U.S.C. §1400, *et seq.*), as well as related disability nondiscrimination statutes, including but not limited to the Americans with Disabilities Act, (42 U.S.C. §12101, *et seq.*). IDEA in particular contains numerous substantive and procedural protections for I.H. in the instant situation.

When the District fails to provide the student with an educational program that is developed and implemented pursuant to the Individuals with Disabilities Education Act (IDEA) and/or fails to offer and implement a program that provides meaningful educational benefit and allows the student to progress from year to year and advance appropriately toward appropriate goals and objectives, IDEA provides that the student

11

Defendants' Opposition to Application for Temporary Restraining Order

may access an administrative hearing review process and obtain viable relief for such failures on the part of the District by filing a "due process complaint notice," which is essentially a complaint like those filed in federal or state court.  20 U.S.C. § 1415(b)(7).

A due process complaint requires, among other things, a description of the nature of the problem of the child relating to such proposed initiation or change, including facts relating to such problem, and a proposed resolution of the problem to the extent known and available to the party at the time. 20 U.S.C. § 1415(b)(7)(A). In California, the Office of Administrative Hearings/Special Education Division hears matters related to the any special education matter relating to the identification, evaluation or educational placement of a child with a disability, or the provision of free appropriate public education ("FAPE") to the child.  *See* 34 C.F.R. § 300.507(a)(1). These complaints result in legal proceedings, up to and including administrative trials. The results of these cases may be appealed to federal court. 20 U.S.C. § 1415(g).

Here, I.H. exercised his rights under IDEA and filed a complaint with the Office of Administrative Hearings on the evening of August 16, 2018. *See* Exh. A to Steel Decl. I.H.'s case addresses both the District's failure to identify I.H. over an extended period of time as a student in need of special education services, and also addresses the dispute regarding his current placement. *See* Steel Decl. ¶12.

I.H. also filed a motion for "Stay Put." <u>The District did not respond to that motion</u>. It could have addressed its alleged concerns there. Exh. B, Steel Decl.

The District also failed to hold a resolution session that would have been held within 15 days of the filing of the due process complaint.  As a result, I.H. filed a motion for the hearing be expedited. District did not oppose this motion.

It did not. Instead, it now seeks to create an emergency under which it needs a TRO.

//

//

//

Defendants' Opposition to Application for Temporary Restraining Order

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## C. Under OAH's "Stay Put" Order the District is Required to Provide Intensive Behavior Services to I.H. that Address Any Disability-Related Behavior.

Here, the District is now blaming I.H. for behavior directly related to his autism, most of which arose when there was no behavior services or plan.  The District submits to this court behavior incidents as far back as August of 2017, when there was no diagnosis, no plan to evaluate I.H. for a disability and no IEP. In fact, these form the basis of I.H.'s allegations in his administrative complaint that the District failed to identify I.H. as a student in need of services, despite obvious signs of a disability.

Even after I.H. had an IEP in January 2018, it was not implemented, which is well documented in the January 22, 2018 IEP. Exh. B (Stay Put Motion Att. B: Exh. B): Steel Decl.  In addition, the District failed to complete a thorough autism evaluation resulting in a delay of his much need specific interventions.[6]  This is why I.H. was able to obtain the independent evaluation from Dr. Freeman.

The September 5, 2018 OAH Order for Stay Put Case No. 2018080844 stated that I.H. had no current placement because OSD refused to allow I.H. to return to school in his prior placement, Cesar Chavez with the services from the February 26, 2018 IEP.  OAH found that I.H. was entitled to return to his prior agreed up placement and services, which were outlined in the February 26, 2018 IEP.  Exh.B (Stay Put Motion Att. B: Exh. C) Steel Decl. The District offered the February 26, 2018 to address I.H.'s disabling condition.  At the time of this IEP the District found that I.H. was a student with speech and language and other health impairment/attention deficit disorder.  Prior to this IEP there were several behavior incidents, but the decision at this

---

[6] Early interventions "… minimizes the secondary symptoms and disruptive behavior, such as aggression, tantrums, and self-injury, that are displayed by children with the disorder.  If left untreated, however, symptoms of autism spectrum disorder can become more severe and require extensive and expensive therapeutic interventions". Timothy O. v. Paso Robles Unified Sch. Dist., 822 F.3d 1105, 1109 (9th Cir. 2016)

Defendants' Opposition to Application for Temporary Restraining Order

IEP was that these behavior issues could be addressed through intensive behavior services that could be offered at the public school through the IEP.

The interim and temporary placement was only for 45 days as a result of a single incident on March 9, 2018. District is now seeking to extend the temporary placement rather than implement the February 26, 2018 IEP in the public school.  Every incident while at the public school prior to March 9, 2018, the District never filed a for a TRO, never claimed that I.H. was "dangerous" or that these behaviors could not be addressed through the IEP process.

On July 26, 2018, Dr. Betty Jo Freeman, attended the IEP to review her results, her recommendations include systematic positive behavior interventions to address I.H.'s behaviors.  Based on her expert opinion, the behavior services listed in the February 26, 2018 IEP could address his behaviors pending the outcome of the due process hearing.

### E. The District is ignoring expert advise on how to address I.H.'s disability related needs, and then using their failures as the basis for this application.

I.H. has a diagnosis of autism from one of the leading experts in the country, Dr. Betty Jo Freeman.  After a thorough evaluation and observation, that included an observation at Casa Pacific Non-Public School, _Dr. Freeman recommended a program for students with autism and not Casa Pacifica Non-Public School._

What Dr. Freeman recommended was an autism program that includes an intensive one to one behavior program that can address his social, behavior and communication deficits. Dr. Freeman opined that this program can be provided in an individual setting, with a progression then to small group and then to larger group setting. *See generally* Freeman Report, Exh. Freeman Decl. The District has disregarded Dr. Freeman's recommendations.

What the District asks through this application is that this Court also disregard Dr. Freeman's recommendations, and issue orders contrary to both common sense and

expert opinion.

**F.  The school where the District is trying to force I.H. to attend has already caused injury to I.H. during his brief prior attendance there.**

I.H. was at Casa Pacific Non-Public School from April 2-June 8, 2018.  During that time period, he was sent home with scratches on at least two occasions. Cortez Decl.  On May 11, 2018, I.H. was in the segregation room and was injured so severely he required four staples in the back of his head. His mother was called to pick him up and when she arrived he had blood running down his back and his shoes and socks were filled with blood. *See* Cortez Decl. (I.H.'s mother).

I.H. is not safe at Casa Pacifica Non-Public School, since their interventions have resulted in injury to I.H. *See* Dr. Freeman Decl.

**IV. Conclusion**

For the foregoing reasons, I.H. respectfully requests that the request for a restraining order be denied in its entirety.

Dated: September 11, 2018        **LEARNING RIGHTS LAW CENTER**

**DISABILITY RIGHTS ADVOCATES**

**LAW OFFICES OF SHAWNA L. PARKS**

By:_____
        Shawna L. Parks Esq.
        Attorneys for Defendant

Defendants' Opposition to Application for Temporary Restraining Order